UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| FREDRICK DREW,<br><br>          Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>          Defendant. | CASE NO. 1:23-CV-01353-DAC<br><br>MAGISTRATE JUDGE DARRELL A. CLAY<br><br>**MEMORANDUM OF OPINION & ORDER** |

INTRODUCTION

Plaintiff Fredrick Drew challenges the Commissioner of Social Security's decision denying supplemental security income (SSI). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On July 14, 2023, the parties consented to my exercising jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF #7). Following review, and for the reasons stated below, I **AFFIRM** the Commissioner's decision.

PROCEDURAL BACKGROUND

In 2017, Mr. Drew filed for SSI. (*See* Tr. 96). On September 17, 2019, an Administrative Law Judge (ALJ) assessed Mr. Drew's residual functional capacity (RFC) and determined he was not disabled. (Tr. 104). Mr. Drew then filed for SSI on July 17, 2020, alleging a disability onset date of January 1, 2014. (Tr. 293). The claim was denied initially and on reconsideration. (Tr. 110-15). Mr. Drew requested a hearing before an ALJ. (Tr. 178-80). Mr. Drew (represented by counsel)

1

and a vocational expert (VE) testified on May 21, 2021. (Tr. 59-92). On June 2, 2021, the ALJ determined Mr. Drew was not disabled before May 1, 2021, but became disabled on that date. (Tr. 150).

On April 4, 2022, the Appeals Council reviewed and vacated the ALJ's decision. (Tr. 158). The Appeals Council remanded the matter to the ALJ to further evaluate whether a cane was medically necessary, further develop the vocational evidence to ascertain whether the assessed RFC is closer to light work than to sedentary work, and obtain clarification from the VE about the effect of the assessed limitations on the claimant's occupational base. (Tr. 159).

Mr. Drew and another VE testified on September 8, 2022. (Tr. 35-58). On September 21, 2022, the ALJ again determined Mr. Drew was not disabled. (Tr. 10-23). The Appeals Council denied Mr. Drew's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6; *see* 20 C.F.R. §§ 416.1455, 416.1481). Mr. Drew timely filed this action on July 13, 2023. (ECF #1).

FACTUAL BACKGROUND

## I.    Personal and Vocational Evidence

Mr. Drew was 48 years old on the application date and 50 years old at the most recent administrative hearing. (Tr. 110). Mr. Drew has a ninth-grade education and last worked in 2004 or 2005. (Tr. 67).

## II.    Administrative Hearing

At the time of the first administrative hearing, Mr. Drew was status-post bilateral total hip replacements. (Tr. 64). He had the right hip replaced before the prior ALJ found him not disabled in 2019 and underwent a left hip replacement in 2020. (*Id.*). Mr. Drew testified his right hip

continued to hurt despite the replacement. (Tr. 76). He also endorsed pain in his knees, right shoulder, right foot, bilateral hands, and lower back. (Tr. 68). During the most recent administrative hearing, Mr. Drew testified he cannot work because arthritis causes his hands to freeze or lock up. (Tr. 44). His doctor referred him to an orthopedic specialist for a hand evaluation and he is waiting for an appointment. (*Id.*). Mr. Drew also complained of right-sided numbness between the hip and the knee for which knee and hip injections have been unhelpful. (Tr. 46). When numbness sets in, he must sit down immediately. (Tr. 48). Mr. Drew also has foot pain. (Tr. 49). He uses orthotic inserts and receives foot injections to control the pain. (*Id.*).

On a typical day, Mr. Drew washes up and eats breakfast. (Tr. 45). About once a week, he goes to the grocery store. (*Id.*). Occasionally, a friend will help clean his residence. (*Id.*). He cannot do things like mopping on his own but can wash some dishes for a few minutes at a time. (Tr. 46). Bending and squatting cause hip pain so Mr. Drew uses a reaching tool to pick objects up from the floor. (Tr. 49-50). When his hips hurt worse than usual, he uses a walker around the house. (Tr. 80). When Mr. Drew leaves the house to go to the grocery store with his brother, he uses a cane. (Tr. 48, 80). He is most comfortable when seated in a chair with his feet elevated to relieve foot and hip pain. (Tr. 50). He returns to this position about four times a day for 25 to 30 minutes at a time. (*Id.*).

The VE testified that a person of Mr. Drew's age, education, and experience, with the functional limitations described in the ALJ's RFC determination, could perform jobs including marker, warehouse checker, and laundry folder. (Tr. 52-53).

### III.    Relevant Medical Evidence

Mr. Drew has a history of hip dysfunction, cervical and lumbar degenerative disc disease, osteoarthritis in his hips and shoulders, and obesity. In March 2019, Mr. Drew was found to have arthritis in his right hip and underwent a total hip replacement surgery. (Tr. 415, 880). X-ray imaging revealed severe bilateral joint space narrowing with bone-on-bone contact, sclerosis, subchondral cysts, osteophytes, and mild posterosuperior subluxation of the femoral head. (Tr. 881). Intraoperative radiographic imaging revealed an in-progress right hip replacement and, in the left hip, moderate joint space narrowing and osteophyte formation with cam femoral morphology.[1] (Tr. 880).

On January 18, 2020, X-rays of the hips revealed right-sided total hip arthroplasty without hardware fractures, end-stage degenerative changes in the left hip, and bilateral sacroiliac joint degenerative changes. (Tr. 431).

On July 7, 2020, Mr. Drew met with Praveer Kumar, M.D., and complained of a sudden onset of right-sided flank pain, arthralgias, joint swelling, and limb pain. (Tr. 398). Mr. Drew walked with a normal gait but had left and right hip tenderness on examination. (Tr. 400). Dr. Kumar ordered a CT scan. (Tr. 397). The CT scan, dated July 23, 2020, revealed right hip subchondral lucency at the acetabulum and moderate-to-severe left hip arthroplasty. (Tr. 532).

---

[1]     Cam femoral morphology is a form of femoroacetabular impingement (FAI), otherwise known as hip impingement, and results from a bony growth at the head of the femur. Signs and symptoms include hip pain that worsens during physical activity or long periods of sitting, limping, and hip stiffness. Failing to treat FAI can lead to hip osteoarthritis (breakdown of cartilage around the hip), a complication that can lead to severe pain and limited mobility. *Femoroacetabular Impingement,* Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/21158-femoroacetabular-impingement-fai (last accessed May 15, 2024).

On August 12, 2020, Mr. Drew met with a podiatrist and complained of sharp, stabbing heel pain that is worse in the morning and after prolonged rest and better with walking. (Tr. 480). Examination of the right foot showed ankle range of motion in dorsiflexion, and pain on palpation to the medial tubercle, central heel, and plantar fascia medial slip. (Tr. 482). The podiatrist educated Mr. Drew on proper foot gear, prescribed custom orthotics, advised him to ice his heel after physical activity, and demonstrated calf exercises. (Tr. 483).

On October 1, 2020, Mr. Drew met with another podiatrist for evaluation of his right foot. (Tr. 497). On physical examination, the doctor identified a Morton's neuroma at the third interspace of the right foot. (*Id.*). Mr. Drew received a cortisone shot and was referred for a full contact orthotic with a metatarsal pad on the right side. (*Id.*).

On October 29, 2020, Mr. Drew returned to the podiatrist and reported the neuroma was pain-free. (Tr. 499). He requested another cortisone shot for a flare-up of a heel spur on the right side. (*Id.*).

A hip and pelvic X-ray, dated November 5, 2020, showed severe joint space narrowing with osteophytosis in the left hip. (Tr. 876).

On December 22, 2020, Mr. Drew underwent a left-sided total hip arthroplasty. (Tr. 549-50).

On February 11, 2021, Mr. Drew followed up with his hip surgeon Steve Fitzgerald, M.D., and reported being happy with the results of the left-sided hip replacement. (Tr. 584). Physical examination revealed pain-free range of motion in the left hip. (*Id.*). Dr. Fitzgerald referred Mr. Drew for post-surgical physical therapy of the left hip. (*Id.*).

On February 23, 2021, Mr. Drew attended an initial evaluation for physical therapy. (Tr. 579-83). There, he reported his left hip remained sore after the surgery and his right hip pain had increased. (Tr. 582). The physical therapist noted decreased left hip range of motion, decreased bilateral hip strength, decreased bilateral hamstring and hip flexor flexibility, altered gait mechanics, and decreased balance. (*Id.*). Mr. Drew endorsed difficulty walking without an assistive device, standing, negotiating stairs, performing lower extremity activities of daily living, and sleeping. (*Id.*).

On April 19, 2021, Mr. Drew met with Dr. Kumar and complained of right-sided pain. (Tr. 562). Physical examination revealed bilateral hip tenderness. (Tr. 565).

On June 24, 2021, Mr. Drew returned to Dr. Kumar's office and complained of lower back and right flank pain. (Tr. 655). Dr. Kumar ordered a CT scan to investigate. (*Id.*). The scan showed grade 1 retrolisthesis of L5-S1 and lucency about the right acetabular screw. (Tr. 961).

On December 9, 2021, Mr. Drew returned to Dr. Fitzgerald's office for evaluation of right hip pain. (Tr. 635). Dr. Fitzgerald noted a mildly antalgic gait, a moderate Stinchfield sign, mild tenderness to palpation over the trochanter, normal strength with hip flexion and knee extension, and slightly diminished dorsalis pedis and posterior tibial pulses. (*Id.*). Dr. Fitzgerald determined Mr. Drew had hip flexor tendinitis for which he declined an injection under ultrasound. (*Id.*). Dr. Fitzgerald advised Mr. Drew to work on weight loss and prescribed physical therapy. (*Id.*).

On December 14, 2021, Mr. Drew met with Alyssa Perchinske, APRN-CNP, for evaluation of neck and shoulder pain. (Tr. 672). On physical examination, she noted tenderness in the cervical spine region, shoulders, and trapezius muscles. (*Id.*). Mr. Drew endorsed neck and shoulder pain with most range of motion movements. (*Id.*). CNP Perchinske ordered shoulder and

cervical spine X-rays and referred Mr. Drew to physical therapy. (Tr. 671). Shoulder X-rays revealed mild bilateral acromioclavicular osteoarthritis. (Tr. 962-63). Cervical spine X-rays showed multilevel spondylosis, most significant at C6-C7, overall straightening of normal cervical lordosis, multilevel disc space narrowing, multilevel facet arthropathy, multilevel uncovertebral hypertrophy, and multilevel osteophyte formation. (Tr. 964-65).

On December 27, 2021, Mr. Drew presented at the emergency department with bilateral hip pain. (Tr. 721-24). Physical examination revealed swelling of the left hip and diminished active range of motion due to pain but normal passive range of motion. (Tr. 722). Imaging of the hip was normal. (Tr. 735).

On May 16, 2022, Mr. Drew returned to Dr. Kumar's office for a complete physical examination. (Tr. 698). He endorsed arthralgias, joint stiffness, back pain, difficulty walking, and limb pain, but otherwise "fe[lt] fine." (*Id.*). Physical examination was normal. (Tr. 702).

## IV.    Medical Opinions

In connection with Mr. Drew's prior claim for disability, he attended a consultative physical examination on April 19, 2018. (Tr. 588-92). Based on a clinical interview, physical examination, and a lumbar X-ray, Eulogio Sioson, M.D., determined "if one considers his pain and above findings, he would be sitting most of the time, he could walk and stand but not continuously, occasionally lift and carry from 0-10 lbs. He could do handling and manipulation. Hearing and speaking unaffected." (Tr. 589).

On September 1, 2020, State agency medical consultant Lynne Torello, M.D., reviewed Mr. Drew's medical records up to August 2020 and adopted the prior RFC from September 2019:

> The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except can lift 20 pounds occasionally, 10 pounds

frequently. Can walk, sit, and stand 6 out of 8 hours. Can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds. Can occasionally crouch and crawl. Can frequently balance and kneel. Must avoid dangerous machinery and unprotected heights.

(Tr. 113). On October 27, 2020, State agency medical consultant W. Scott Bolz, M.D., affirmed Dr. Torello's determination. (Tr. 120).

On December 8, 2020, Dr. Kumar completed a medical source statement regarding Mr. Drew's functional capacity. (Tr. 533-34). Dr. Kumar stated Mr. Drew can stand and walk for four hours in an eight-hour workday, up to a half-hour at a time, and can sit for four hours in an eight-hour workday, up to one hour at a time; can never climb, balance, stoop, crouch, kneel, or crawl; and never reach, push and pull, or perform activities using fine and gross manipulation. (*Id.*). He stated Mr. Drew experiences mild pain that would interfere with concentration, take him off task, and cause absenteeism. (Tr. 534). In addition, Dr. Kumar determined Mr. Drew should be restricted from working around heights, moving machinery, temperature extremes, and pulmonary irritants. (*Id.*). Last, Dr. Kumar opined Mr. Drew required additional unscheduled rest periods during an eight-hour workday, up to one hour in total. (*Id.*).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. § 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## THE ALJ'S DECISION

At Step One, the ALJ determined Mr. Drew had not engaged in substantial gainful activity since July 6, 2020, the application date. (Tr. 13). At Step Two, the ALJ identified the following severe impairments: dysfunction of major joints (hips), degenerative disc disease (lumbar, cervical), osteoarthritis and allied disorders (hips, shoulders), bilateral total hip replacements, and obesity. (*Id.*). The ALJ identified other non-severe impairments including Morton's neuroma and plantar fasciitis. (*Id.*).

At Step Three, the ALJ found Mr. Drew does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Tr. 13-16). Specifically, the ALJ considered Listings 1.15 and 1.16 (disorders of skeletal spine), 1.17 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), and 1.18 (abnormality of a major joint). (*Id.*). The ALJ also considered Mr. Drew's obesity under Social Security Ruling (SSR) 19-2p. (Tr. 15).

The ALJ determined Mr. Drew's RFC as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps and stairs, the claimant can never climb ladders, ropes, or scaffolds, the claimant can frequently balance, the claimant can frequently kneel, the claimant can occasionally crouch, the claimant can occasionally crawl, and the claimant can never work at unprotected heights or near dangerous moving machinery.

(Tr. 16).

At Step Four, pursuant to *Dennard v. Sec'y of Health & Hum. Servs.*, 907 F.2d 598 (6th Cir. 1990), the ALJ adopted the prior ALJ's determination that Mr. Drew did not have past relevant work. (Tr. 21). At Step Five, the ALJ determined jobs exist in significant numbers in the national economy that Mr. Drew can perform, including marker, warehouse checker, and folder. (Tr. 22). Therefore, the ALJ found Mr. Drew was not disabled. (Tr. 22-23).

### STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. The Commissioner's findings "as to any fact if supported by

10

substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). But "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

In determining whether substantial evidence supports the Commissioner's findings, the court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence (or indeed a preponderance of the evidence) supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether proper legal standards were applied. The failure to apply correct legal standards is grounds for reversal. Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own regulations and

thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004).

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted); accord *Shrader v. Astrue*, No. 11 13000, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *Hook v. Astrue*, No. 1:09-cv-1982, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

DISCUSSION

Mr. Drew raises three issues for review:

1.   Whether the ALJ failed to properly assess the persuasiveness of the opinion evidence.

2.   Whether the ALJ erred in finding that the use of a cane was not part of Mr. Drew's residual functional capacity and did not impact his ability to stand and walk.

3.   Whether the ALJ's determination that Mr. Drew retains a light residual functional capacity is supported by substantial evidence.

(ECF #12 at PageID 1005). I conclude that none of the assigned errors warrants remand.

**I.    The ALJ properly assessed the persuasiveness of the medical opinions and prior administrative medical findings.**

A claimant's RFC is defined as the most a claimant can still do despite the physical and mental limitations resulting from his impairments. 20 C.F.R. § 416.945(a). The ALJ alone is responsible for determining a claimant's RFC. 20 C.F.R. § 416.946(c). The RFC must be based on all relevant evidence in the record, including medical evidence, medical reports and opinions, the

12

claimant's testimony, and statements the claimant made to medical providers. 20 C.F.R.

§ 416.945(a); *see also Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2

(N.D. Ohio Mar. 2, 2010).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(c)(1)-(5). The ALJ must explain how he considered the factors of supportability and consistency, and "may, but [is] not required to" explain the remaining factors of relationship with the claimant, specialization, or other factors, absent the ALJ's finding that two opinions are "equally" persuasive. *See* 20 C.F.R. § 416.920c(b)(2)-(3). According to the regulations, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his medical opinion, the more persuasive the opinion will be. The more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinion will be. *See* 20 C.F.R. § 416.920c(c)(1)-(2). I look to the whole document when reviewing the ALJ's decision. *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014). The ALJ must make the reasons for the supportability and consistency analysis sufficiently clear for subsequent review to determine whether substantial evidence supports the claimant's disability determination. *Id.* "So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 440 (6th Cir. 2012).

The ALJ evaluated Dr. Kumar's opinion as follows:

The claimant's primary care provider, Praveer Kumar, M.D., submitted an opinion on December 5, 2020. Dr. Kumar opined that the claimant could lift and carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk 30 minutes uninterrupted and four hours total, and sit one hour uninterrupted and four hours total. He noted the claimant could never climb, balance, stoop, crouch, kneel, crawl, reach, push/pull, or perform fine or gross manipulation, and he indicated limited exposure to heights, moving machinery, temperature extremes, and pulmonary irritants. Dr. Kumar explained that a cane, walker, and brace have all been prescribed without additional explanation. He noted the claimant experienced mild pain that interfered with concentration, took the claimant off task, and resulted in absenteeism. He opined the claimant needs to elevate his legs at will to 45 degrees and required additional unscheduled rest periods outside of normal breaks. Dr. Kumar only noted arthritis in support of his opinion. I find the opinion not persuasive for several reasons. First, the opinion is inadequately supported, as it contains a reference to arthritis, and was otherwise absent of any notation or discussion of clinical abnormalities on diagnostic imaging or physical examination to support the extreme limitations contained therein. The opinion was inadequately supported by Dr. Kumar's own treatment notes, which contain examination findings of obesity and persistent bilateral hip tenderness, but no focal neurological deficits, no extremity edema, and a consistently normal gait. Further, in May 2022, Dr. Kumar noted that the claimant's osteoarthritis was stable. The opinion was dated only two weeks before the claimant's left hip replacement surgery. The opinion was not consistent with the opinions of the State Agency physicians and Consultative Physical Examiner Dr. Sioson but was somewhat consistent with the testimony of the claimant.

(Tr. 20-21).

Mr. Drew argues the ALJ provided inadequate reasons for finding Dr. Kumar's opinion not persuasive and did not apply the necessary factors in determining the persuasiveness of the opinion evidence. (ECF #12 at PageID 1020, 1021). I disagree.

The ALJ applied proper legal standards in finding Dr. Kumar's opinion unpersuasive and his conclusion is supported by substantial evidence. The ALJ offered an adequate explanation for finding the opinion not supported: Dr. Kumar justified the opined limitations simply by noting Mr. Drew has arthritis and did not offer further support, such as with notations to abnormal findings on physical examination or within the diagnostic imaging. When faced with an opinion

14

in which the medical provider sets forth little to no explanation for the ALJ to critique, courts have found it sufficient that the ALJ stated the physician failed to provide an accompanying explanation. *See, e.g., Rodriguez v. Comm'r of Soc. Sec.*, No. 21-cv-007652, 2022 WL 3973658, at *3 (N.D. Ohio Sept. 1, 2022) (finding the ALJ sufficiently articulated the supportability factor when he found the physician's opinion unpersuasive because the physician failed to provide an explanation with documented support); *see also Kirkland v. Kijakazi*, No. 3:22-CV-60-DCP, 2023 WL 3205330, at *11 (E.D. Tenn. May 2, 2023) (finding the ALJ sufficiently articulated the supportability factor when he stated "Dr. Barnes does not explain why the claimant is limited to lifting and/or carrying only 5 pounds"). I find the ALJ adequately articulated how he considered the supportability of Dr. Kumar's opinion.

As to consistency, the ALJ stated only that the opinion was inconsistent with the State agency consultants' and Dr. Sioson's opinions and somewhat inconsistent with Mr. Drew's testimony but did not explain with any degree of specificity how they are inconsistent. This explanation does little to build a bridge between the evidence and the result, leaving it instead for this Court to infer the basis for his decision. *Fleischer*, 774 F. Supp. 2d at 877.

Yet, the ALJ's arguable failure to comply with the articulations requirements is ultimately harmless error. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). Such an error may be harmless if it meets one of three circumstances: (1) when the opinion was so "patently deficient that the Commissioner could not possible credit it"; (2) when the Commissioner made findings consistent with the opinion; or (3) the Commissioner otherwise met the goals of the regulations by indirectly attacking the supportability or consistency of the opinion. *Wilson*, 378 F.3d at 547.

The first circumstance is applicable here. Dr. Kumar's opinion is set forth in a series of check boxes accompanied by space for the doctor to indicate what medical findings support his assessment. (Tr. 533-34). Dr. Kumar checked the boxes but only supported his opinions with a notation that Mr. Drew has arthritis. He did not direct the ALJ's attention to actual evidence supporting his opinion, such as physical examination findings, diagnostic imaging, or other medical findings. The Sixth Circuit has determined physician opinions are "patently deficient" when they involve "check-box analysis . . . not accompanied by any explanation." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016). Check-box forms may be patently deficient even when the ALJ does not "expressly cite the unsupported checkbox form as a basis" for rejecting the opinion, as was the case here. *See Gallagher v. Berryhill*, 5:16-cv-01831, 2017 WL 2791106, at *9 (N.D. Ohio Jun. 12, 2017), *report and recommendation adopted*, 2017 WL 2779192 (N.D. Ohio Jun. 27, 2017); *see also Ellars v. Comm'r of Soc. Sec.*, No. 2:14-cv-2050, 2015 WL 3537442, at *3 (S.D. Ohio Jun. 4, 2015), *report and recommendation adopted*, 2015 WL 4538392 (S.D. Ohio Jul. 27, 2015).

Mr. Drew also claims the ALJ erroneously favored the State agency medical consultants' outdated opinions that failed to account for critical medical evidence germane to the relevant period, including his left hip surgery and participation in physical therapy, Dr. Kumar's opinion, and records related to treatment for continuing pain. (ECF #12 at PageID 1022). He cites *Gentry v. Comm'r of Soc. Sec.*, No. 1:17 CV 1182, 2018 WL 4305213 (N.D. Ohio Sept. 10, 2018), for the proposition that a court may remand when treatment has continued after state agency review and there is evidence of worsening of impairments. This argument is unpersuasive.

16

First, this case is distinguishable from *Gentry* because there is no evidence that the conditions for which Mr. Drew sought treatment had worsened. At the hearing, Mr. Drew claimed his left hip was fine but his right hip still gives him trouble. (Tr. 46). However, he denied that the condition worsened since the prior decision in 2019 and claimed the only change since then was that his hands locked up more frequently. (Tr. 44).

In *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009), the claimant also argued the ALJ erred by relying on State agency medical consultant opinions because they were outdated. The Sixth Circuit, however, held that the ALJ properly considered the State agency opinions by also considering medical examinations that took place after the agency's assessments. *Id.* Similarly, the ALJ here also considered the medical evidence dated after those assessments. For instance, after Mr. Drew's left hip replacement, the ALJ noted he displayed pain free range of motion testing, attended physical therapy where he made some gains in improving strength and decreasing pain, and, despite some tenderness in both hips, he ambulated normally and was free of focal neurological deficits on examination. (Tr. 17). The ALJ also acknowledged that, after his left hip replacement surgery, Mr. Drew continued to have some right hip pain that produced a mildly antalgic gait and hip tenderness, but he displayed normal range of motion without eliciting pain. (Tr. 18). After Dr. Fitzgerald diagnosed tendinitis in the right hip flexor, the ALJ noted Mr. Drew declined an injection for pain relief. (*Id.*). In discussing the state agency opinions, the ALJ stated:

> I find the opinions persuasive as they were supported by the record that showed improvement following left hip surgery in December 2020 and conservative treatment for complaints of right hip pain in December 2021 as well as other clinical findings that include no pain with flexion or internal rotation, 5/5 hip flexion and knee extension, normal sensation, normal reflexes, normal coordination, a normal gait, no joint swelling, normal movement of all extremities, normal stability, normal muscle strength and tone, no focal neurological deficits, and no acute distress.

17

(Tr. 20). Because the record and Mr. Drew's own testimony do not support that his condition worsened after State agency review, and because the ALJ appropriately considered the medical evidence post-dating those assessments, I no find error and decline to remand on this basis.

## II.   The ALJ did not err in declining to find Mr. Drew required a cane as part of his RFC.

Mr. Drew argues that "substantial evidence proves that [he] continued to use a cane after his bilateral hip replacements to assist with standing, walking, and climbing stairs" including reduced endurance, slow cadence, periodic antalgic gait, arthralgias, swelling, limited range of motion, pain, and his own testimony regarding the circumstances for which he needs a cane. (ECF #12 at PageID 1026-27). I find no error in the ALJ's decision not to include a cane in forming Mr. Drew's RFC.

The ALJ is not required to incorporate the use of a cane in the RFC unless the cane is medically required. *See Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). SSR 96-9p explains when a cane or other hand-held assistive device is medically required:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (*i.e.*, whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).

SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996); 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.00C6a.

Mr. Drew points to several pieces of evidence to show his cane was medically necessary. Dr. Kumar prescribed the cane to Mr. Drew. (ECF #12 at PageID 1025) (citing Tr. 533). Medical providers sometimes observed Mr. Drew using a cane at medical appointments and physical therapy sessions. (*Id.* at PageID 1025-26) (citing Tr. 558, 569, 573, 576-77, 672, 721). At the

hearing, Mr. Drew testified he used a cane when leaving the house. (ECF #12 at PageID 1026) (citing Tr. 48). The ALJ acknowledged this evidence and treatment records noting Mr. Drew's gait, which was sometimes mildly antalgic but most often normal. (Tr. 19). But because the record did not contain medical documentation establishing the need for a cane and a description of the circumstances for which it is needed, the ALJ reasonably determined Mr. Drew had not shown a cane was medically necessary. (Tr. 19-20). Although Mr. Drew takes issue with that conclusion, none of the evidence he emphasizes satisfies the requirements of the regulations or demonstrates the ALJ committed reversible error in his analysis.

First, while a cane does not have to be prescribed in order to be medically necessary, "[t]he lack of a prescription [] is an appropriate factor to consider as to whether substantial evidence supports the ALJ's decision that a cane was not medically necessary." *Krieger v. Comm'r of Soc. Sec.*, No. 2:18-CV-876, 2019 WL 1146356, at *5 (S.D. Ohio Mar. 13, 2019), *report and recommendation adopted*, 2019 WL 3955407 (S.D. Ohio Aug. 22, 2019). Thus, the ALJ did not err when he considered the lack of an original prescription for the cane as a factor in determining whether Mr. Drew's cane was medically necessary.

Second, courts in this district hold that the regulations and guidance in SSR 96-9p "require[] medical documentation of the need for the assistive device, not just notations relating to a claimant's continued use of an assistive device." *Barnes v. Comm'r of Soc. Sec.*, No. 5:21-CV-01688-JDA, 2023 WL 2988346, at *8 (N.D. Ohio Mar. 22, 2023) (collecting cases). Therefore, the number of times medical staff saw Mr. Drew with a cane does not establish medical necessity for a cane.

19

Last, a claimant's testimony about his use of an assistive device does not qualify as medical documentation establishing the need for a cane. *See White v. Saul,* No. 1:20-cv-236, 2021 WL 1145463, at *8 (N.D. Ohio Mar. 25, 2021) ("Numerous court decisions have considered a plaintiff's testimony regarding the use of assistive devices, but found it unavailable when the record lacked supporting medical documentation demonstrating the requirement for such a device.") (collecting cases).

The Sixth Circuit has not directly ruled on this issue, but courts within the circuit have noted the paramount finding in cases involving assistive devices is documentation describing the circumstances for which it is needed. *Cunningham v. Comm'r of Soc. Sec.,* No. 1:19-cv-2227, 2020 WL 5231985, at *10 (N.D. Ohio Sept. 2, 2020) (citing *Tripp v. Astrue,* 489 F. App'x 951, 955 (7th Cir. 2012) (noting that a finding of medical necessity of an assistive device requires a statement of the circumstances in which it is needed and that other circuits "have required an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary")); *Golden v. Berryhill,* No. 1:18CV00636, 2018 WL 7079506, at *19 (Dec. 12, 2018) (noting SSR 96-9p requires medical documentation establishing the need for a cane and the circumstances for which is it needed), *report and recommendation adopted,* 2019 WL 415250 (N.D. Ohio Feb. 1, 2019); *Krieger,* 2019 WL 1146356, at *6 (same). The ALJ's conclusion that Mr. Drew has not established the medical necessity to use a cane is supported by substantial evidence because there is no evidence of record constituting medical documentation describing the circumstances in which the cane is needed. Even if the evidence Mr. Drew emphasizes constituted substantial evidence supporting medical necessity, it bears repeating that a court cannot overturn and ALJ's decision, even if he cites substantial evidence to support his position, "so long as substantial

evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. As such, I decline to remand on this basis.

### III.  The ALJ's conclusion that Mr. Drew can perform light exertion work is supported by substantial evidence.

Mr. Drew's last issue concerns the ALJ's determination that he can perform jobs classified as light exertion positions. According to Mr. Drew, the ALJ "failed to accurately consider and evaluate all of the relevant evidence regarding [his] limited ability to stand and walk, including his need for assistive devices to ambulate and the opinion of his treating medical source." (ECF #12 at PageID 1014). True enough, the ALJ's RFC assessment must be based on all relevant evidence in the case record. 20 C.F.R. § 416.945(a)(1). The ALJ did just that.

After summarizing the medical evidence pertinent to his ability to stand and walk, Mr. Drew claimed the ALJ selectively read the medical evidence and found no disability despite "notations of tenderness, pain, an antalgic gait, arthralgias, joint swelling, limb pain, tenderness in both[*sic*] sharp, stabbing, right heel pain, decreased right ankle joint range of motion, pain on palpation to the right medial tubercle, pain on palpation to the right central heel, and pain on palpation along the right plantar fascia medial slip." (ECF #12 at PageID 1020). Mr. Drew asserts "the ALJ recited the evidence, but did not accurately consider all of the objective findings which demonstrated [his] difficulty with standing and walking." (*Id.*).

Mr. Drew's argument amounts to a request to reweigh evidence the ALJ considered and come to a different conclusion, a level of review not afforded to the courts. *Brainard*, 889 F.2d at 681. Moreover, the ALJ fairly summarized the evidence, noted the same relevant evidence Mr. Drew emphasizes, and determined that other clinical findings, including "no pain with flexion or internal rotation, 5/5 hip flexion and knee extension, normal sensation, normal reflexes, normal

coordination, a normal gait, no joint swelling, normal movement of all extremities, normal stability, normal muscle strength and tone, no neurological deficits, and no acute distress" warranted the assessed RFC. (Tr. 17-19). In so doing, the ALJ built a logical bridge between the evidence and his conclusions such that this Court can trace the path of the ALJ's reasoning. Moreover, the ALJ has cited substantial evidence in the record to support his conclusions. I decline to remand on this basis.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, I **AFFIRM** the Commissioner's decision denying disability insurance benefits.

Dated: May 21, 2024

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE